We have a time clock that we appreciate your attempting to follow, and when the red light comes on, if you're in the middle of a sentence, please conclude, or else you may answer questions from the court at that point. We also are familiar with the briefs and record excerpts, but we have not necessarily read the entire record, so we would appreciate record citations for those who are appropriate. With that, we call the first case of the morning, number 22-50756, and recognize Mr. Banias. And the first question, I suppose, is whether the case has become moot. Thank you, Your Honors, and may it please the court. Your Honor, it is not moot. We have one applicant who is still waiting on a decision. Which one is it? I believe it's Mr. Lee, Wade Lee, and they've been waiting now 29 months for a decision on an adjustment of status application that the government says takes an hour and a half to make, and that's why we're here. We believe that's an unreasonable delay, and the only thing we're asking this court to let us to do is to make that claim and go forward, and find out the reasons why this particular application still doesn't have a decision. The lower court should be reversed, Your Honors, because they violated indisputable principles of Rule 12b-6 here. Rule 12b-6 is well-plowed ground. SCOTUS has set up, excuse me, the Supreme Court has set up the Iqbal-Twombly standard, they're the nice analytical structure to look at. We look at the four corners of the complaint. We find the specific non-conclusory allegations. We look at the factors of the cause of action. How do you get, that's assuming you reach the merits, I suppose you're going to talk about jurisdiction at some point. Your Honor, this court has jurisdiction over this case. Patel, which is a recent case out of the Supreme Court, doesn't address delay cases. It addresses final agency action cases that arise through a petition for review from an As this court knows, petitions for review are very different beasts than decisions out of district courts. Congress has seen fit to do zipper clauses and limit challenges to orders of removal, deportation, to this court and the other circuits around the country. It has not done so for cases that arise in the federal district. So Congress gave no, there's no firm deadline that Congress prescribed. There's this aspirational target, I suppose, of six months. Why couldn't we take from that that Congress gave CIS discretion, a measure of discretion to pace, to set the pace and the order of adjudications by not providing this firm deadline within which to process them? Your Honor, I think that Congress did give them discretion to determine how long it takes to do an I-485. But that discretion is limited by the Administrative Procedure Act that says it has to be done within a reasonable time, taking into account the details and specifics of the individual applicant. So how are we supposed to go about defining a reasonable time? Your Honor, a common standard around the country is the factors that the D.C. Court arrived at in the 1970s, nicknamed the track factors. This Court hasn't adopted those as firm, and in fact, most courts haven't said those are dispositive. The Gonzalez case out of the Fourth Circuit from 2020 identifies them, says, yes, these are good factors to consider, but it's not everything. It's not dispositive. It's not an elemental test. So the case law has derived and identified certain things, certain factors that we talk about in the brief, to determine what is reasonable and what isn't. And those factors have to be done on an individualized basis. If Mr. Fortes— If the remaining—pardon me—if the remaining plaintiff's claim is adjudicated, handled, would you argue the case is, at that point, moot, or would you argue that it's a matter capable of repetition but evading review? Your Honor, in this particular circumstance, the case would be moot because this individual would acquire a lawful permanent residency, and the capable of repetition while evading review exception only applies if that individual would have a reasonable likelihood of having to suffer that delay again. So while there are other claims, such as temporary work authorization, that may be capable of repetition while evading review in the immigration context, this is just not one of those. And I think what we're seeing here, Your Honor, is just to be frank, is there's been a significant increase in cases challenging administrative delays related to immigration benefits, and the courts are struggling to handle those. And so, especially out of Texas, there's cases out of Texas, and you see dozens of cases out of Texas dismissing these cases at the Rule 12 stage, and I think the real reason you see that is they can't handle the volume, and I'm sympathetic to that. But— Let me go back. Let me go back to the jurisdiction issue, because now that I've found my copy of—is this a 1252B1 or B2 appeal? Your Honor, the government argues both. And Patel covers 1252A2. Well, how do you—I mean, you're talking about APA. The 1252B starts off saying, notwithstanding any other provision of law, statutory or non-statutory. Yes, Your Honor. So the APA doesn't govern here. The APA is always the default background. The organic statute— Notwithstanding means no, right? I don't disagree, Your Honor, but I do believe the rest of that provision applies only to final agency actions, not delays. Well, you can say what you want to, but B2 says no court shall have jurisdiction to review any other decision or action of the attorney general or homeland security, blah, blah, blah, the authority for which is specified to be in the discretion. There's been no decision. There's been no action here, Your Honor. We're not challenging a decision. We're not challenging an action. We're challenging inaction. Well, action and inaction are just flip sides of the same coin, right? I disagree, Your Honor. You're saying that—well, you're saying that inaction amounts to not granting it. The Administrative Procedure Act defines agency action as inaction. That's correct, Your Honor, but the Congress didn't see fit to use that term in 1252A2B2. The other problem with using 1252A2B2 to cover this case, Your Honor, is it would render 1252A2B1 completely superfluous because it identifies this particular statutory provision of 8 U.S.C. 1255 that the government claims and Patel cites, too, to say that this court doesn't have jurisdiction. If 12— Well, as we know, as a matter of statutory interpretation, sometimes Congress writes things more than once in order to be comprehensive, and it is plain that any judgment is one aspect of what they were trying to strip jurisdiction on, and any other discretionary decision or action they were also trying to strip jurisdiction from. I don't disagree with that, Your Honor. There's been no judgment, no action, nothing here, Your Honor. So just to make sure I understand your argument correctly, I think what you're saying is that had there been—had they granted it, had they denied it, had there been any judgment at all, then we would not have the ability to review it. Is that what I'm—is that what I'm understanding your argument to be? The issue here is that there's been no grant, there's been no denial, there's been no judgment at all. That's correct, Your Honor. And I think that's a significant difference, challenging inaction versus action. If you look at Patel, there's no talk of challenging inaction. They talk about the judgment being a— That's fair, Your Honor. —any means, any regarding means regarding, and of course, in the discretion is a broad term and notwithstanding any other provision of law. Your Honor, the problem here is we don't know if the government's done anything. We're in the 12B6 stage— But, you know, we get—I mean, it's hard to be warm-hearted toward your clients when we get removal cases that have been pending for 20 years. Now, of course, the alien doesn't have reason to object to that, but we know very well that the—that Homeland Security or whoever processes this is backed up incredibly on the—on everything relating to immigration. Your Honor, with all due respect, we don't know that because the only thing— I know that because every case—no, I mean, take my word for it, okay? I take your word for it, Your Honor, but I'm stuck with the case that's in front of me, and the only thing we have in front of us is my complaint with specific non-conclusory allegations. The government attached a declaration to its motion to dismiss in blatant violation of Rule 12D. They don't get to assert facts. It's really in the case. This case is in its nascent stages. I'm not—I'm not even relying on the government's affidavit. I'm just telling you what this Court confronts every day in the immigration context. Your Honor, my specialty is litigating against the government for unreasonable delays and denials. I completely agree with you. I see it in every—every day, so I don't disagree with you, but part of that problem is because they have no liability. These motions to dismiss are high-delay, low-risk strategy. They don't have to prove the facts they assert, and we have seen situations where the facts they assert in a motion to dismiss turn out to prove false, but we don't get the opportunity to test those facts because we're kicked out of court under the Rule 12 state. What do we do about the fact that the—the required biometrics were added to the application, what, five months ago? October of 22? Yes, Your Honor. Is that relevant here, that the—the biometrics were only added in October of 22? That's less than six months ago, so were the applications ready for adjudication? Your Honor, biometrics take 48 hours to get back, so yes, they are. Again, we don't know that from this case. I know that from other litigation. We're not there yet. When we get to summary judgment and we get discovery, then—then those facts can come into play. That's uncontested, though, right? What is, Your Honor? About the biometrics, or it's in the record, in the administrative record somewhere? When we filed the amended complaint, all of the plaintiffs had their biometrics taken, Your Honor. Well, okay. And they also had all received their, what we call, interim benefits. But the point is, if they filed them, if they filed biometrics months after the, where you claim is the start date, clearly the government can't operate to finalize this without the fingerprints, right? Your Honor— So, aren't you putting a thumb on the scale, so to speak, about your timeliness? Your Honor, as the plaintiff in the case, I'm allowed to put my thumb on the scale. I'm allowed to assert facts that are specific and non-conclusory, and the court has to assume they're true where we are. And— So, do we have to assume that—I mean, this may not be true for Mr. Waley. So, I could—I mean, that would be pertinent, I suppose, if he's the only live plaintiff left. But suppose that he had filed his original application 29 months ago, but he only got the biometric in in October. Your Honor, I think— When does the timetable for reasonableness commence? I guess that's the bottom line. I think the timetable starts when they file the application. Why? Why? Because what I hesitate to call it sane, because we're in a period of immigration insanity, which I do not hold against your plaintiffs, but what sane conversion application would not depend on having the biometric identification? You see what I'm saying? Your Honor, I'll just note that all of these plaintiffs had entered the country already, and DHS— Just answer my question. Don't give me—what, you know— Why should the timetable start with the filing of an incomplete application? Your Honor, they're not required to provide biometrics alongside the application. But they are required to provide them at some point, are they not? At the government's timetable, Your Honor. Okay, but—so, they could do it automatically. I mean, they could. Your Honor, the Department of Homeland Security— You're not challenging when the government asks for the biometrics, though, right? No, Your Honor. So, if that's not—and I guess the question then is, unless you're challenging the government's delay in that aspect of it, why should we go back to the beginning instead of saying that the reasonableness depends on when the application is complete? Two answers, Your Honor. The agency's required to make a final agency action. The agency's made interim decisions in all of these cases. We say that in the complaint. But they don't have the green card yet. And without that green card, they don't have the benefits of lawful permanent residency. And that's what they're applied for. That's what the government has agreed to give them if they're eligible and they apply. And that's the benefit they're seeking. What's your appreciation of who controls when the biometrics are submitted? Your Honor, the government does. And I'll just note that the government has the ability to use previously taken biometrics because fingerprints don't change. When these folks enter the country, they get their fingerprints. Those can be used by USCIS. And, in fact, plaintiffs all the time get notices to say, And that's a great step in efficiency. It's a great step forward. And they do it now for H-4s, H-1Bs. And so the fact that they can be done, again, it takes 48 hours. If there's a hit, that's a different story. But, again, we don't know if there's a hit. We don't know what's going on. All we know in this case right now is the allegations in my complaint, and that's all the court should be looking at. Everything we're talking about are facts from the government's side that are not relevant in a 12b-6 motion. You know, for some reason, the lower courts have decided that general 12b-6 principles shouldn't apply in unreasonable delay cases. And I don't see an exception for that in the statutes that control it. I don't see an exception for that in the Supreme Court decisions, Norton v. SUA or Southern Utah Wildlife Alliance. And that's the limited question we're here today. The circuit courts have started rejecting this idea. The Sixth Circuit and Barrios-Garcia said, No, you've got to go discover. We can't hold the lack of information for the plaintiffs. Excuse me, my time has run out, Your Honor. May I continue? No, you have time for rebuttal. Thank you, Your Honor. Thank you. Okay, Ms. Faso. Ms. Faso? Whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Alessandra Faso, and I represent the government in this matter. As counsel noted, before this court today is an unreasonable delay case, and the district court did not err in finding that the applicants and now the applicant now has not alleged an unreasonable delay and failed to state a claim in their amended complaint. First and foremost, the applicants have not alleged that the government failed to make a discreet decision that they were required to make. So at the threshold, there's no action alleged that the government failed to take. Furthermore, the applicant's initial amended complaint read as a programmatic challenge, which is expressly prohibited under the APA. At its core, the challenge that the applicants brought to district court was a problem with the way that the agency adjudicates adjustment of status applications. The 33 applicants that started in this legal action all had different filing dates, different underlying reasoning behind their adjustment of status applications. However, the applicant . . . It is undisputed that we're only left to discuss one pending application. Is that correct, or is there more than one? Yes, Your Honor. There's one pending application with one derivative benefit. And the others are now moot? Yes, the others did moot out. And as Judge Willett did note, there's no requirement in the law that the government adjudicate adjustment of status applications within a specific time frame. But there is a requirement that they adjudicate them, correct? Yes, Your Honor. The adjustment of status applications and any other immigration benefits do need to be adjudicated at some point in time. But you would agree that the agency could not, as a matter of pure discretion, could not push pause and stop processing applications altogether? I can see one exception, Your Honor, where that could come into play. So they're not in the facts before us, but in the event that a visa number becomes unavailable to a particular applicant when their priority date retrogresses, which is another issue that is not before this court, the agency does push pause and holds those applications in advance. And the agency has discretion to do so when there's no relief that they can provide those applicants. But absent that, the agency can't simply choose to stop processing. It has to adjudicate applications. Yes, Your Honor. It is the agency's duty to adjudicate the immigration benefit applications. What benefits do green card applicants receive when their 485 is pending? By virtue of having a pending adjustment of status application, applicants have the benefit of working in the U.S., being able to travel internationally with a travel authorization document, and they can renew those benefits. They also have the benefit of job portability to the same or similar occupation if their application is pending for a certain period. How do those benefits differ from when the application is granted? When the application is granted, an applicant receives a green card, which is an enormous privilege for an applicant to receive. Once you receive a green card, you can apply to whatever job that you would like. You can travel internationally without the required... Do you get the ability to apply for welfare and social security and things you wouldn't have otherwise? Federal benefits do become available to lawful permanent residents, yes. But not to just the visa holders. That is correct. That's a big deal. Certainly. However, it is also a big deal to receive the privilege of lawful permanent residents in the United States. That leads to becoming a U.S. citizen and having the opportunity to naturalize if that individual so chooses. Ultimately, the amended complaint before the district court did not plead sufficient facts to establish an unreasonable delay. The applicants would have this court adopt the test articulated in the track case, and even if this court decided to adopt those track factors, which is not binding precedent in the circuit, the government would still prevail under each and every factor based on the facts pled in the complaint. The rule of reason that the applicants allege that the agency is not abiding by, that's simply not the case here. The amended complaint argues that the agency does not follow a strict first-in, first-out adjudication method. That's not the requirement in order to evidence a rule of reason. I'll have this court note that the particular applicants that remain, that have an active cause of action here, they filed their adjustment of status applications on October 28th of 2020 at the height of the pandemic, which was causing many delays and adjudication issues within the agency. That's certainly a factor that should be taken into consideration. The remaining plaintiff, Lee, was that application adjudication ready before the biometrics were added to the file? The fact of whether or not the application is adjudication ready doesn't necessarily hinge on whether the biometrics are collected. Biometrics are collected in the course of adjudication of an adjustment of status application. So once those biometrics were added in October of last year, that means the application can continue being processed and ultimately adjudicated to its end. Does the lack of fingerprints or biometrics make it not adjudication ready? I think it's the flip side of the question. I'm not sure if I understood the answer. Not necessarily, Your Honor, because as counsel noted, it is at the discretion of the agency as to when and how they will request those biometrics. And so should the biometrics be required? Should new biometrics be taken is within the agency's discretion as they process that application to its end. And the facts that you asked the court to consider with regard to COVID and being at the height of the pandemic, are those to be taken into consideration at the motion to dismiss phase or is that more of a motion for summary judgment type of factor? Under the applicant's request that this court consider the track factors with respect to the motion to dismiss, certainly that is a factor that the court should take into consideration at the motion to dismiss stage. That's certainly an uncontroverted fact with respect to the state of when those applications were submitted. Furthermore, the applicants argue that the agency should be adjudicating all benefit applications within six months. Again, an aspirational processing goal that is by no means required law for the agency to abide by. And the impact on the applicants with respect to the delay that they have been experiencing, as I mentioned before, the applicants receive many interim benefits while they wait for their adjustment of status applications to be processed. They're not required to leave the country. They're still able to support their families by being active members of the workforce. And on the flip side, having the agency take a specific adjustment of status application and fast track it to the front of the queue essentially puts another similarly situated applicant, perhaps an applicant who's been waiting even longer at a disadvantage just because that individual had the resources to go to district court and request judicial review of their delay. There's a cap on the visas allocated to green card applicants, correct? That's correct. Would inaction by the agency be one way that an agency could circumvent the cap? Perhaps. However, the visas become available by fiscal year, and then the Visa Bulletin determines each month, and that's issued by the Department of State every month, who is eligible to either apply for a benefit or have their application adjudicated to its end, what are called the final action dates. So while the agency, through the processing of those adjustment of status applications, perhaps delay could result in retrogression of the Visa Bulletin, or the Visa Bulletin could regress, rather, while those applications are pending. However, the agency would not necessarily sit on applications to wait for visa retrogression. This may not be in the record, but if it is, let me know. What percent of applications are adjudicated within six months, that aspirational processing target? Your Honor, I don't believe that is in the record, and it would vary between different service centers and field offices. So, for example, I'll use the applicant in this case, Mr. Lee. His adjustment of status application was pending at the Texas Service Center. He resides in Maryland, so that application was transferred to the Baltimore Field Office. And 80% of applications that are pending with the Baltimore Field Office are adjudicated within 23 months. And this information is available to the public on USCIS's website. And currently, how long has the remaining one been pending? Mr. Lee's application has been pending since it was filed with the Texas Service Center for 28 months. And on the broader scale, applications pending with the Texas Service Center take on average about 31 months to be adjudicated. And that is based on the date that the application was filed with the service center or the field office. I will also note that if you input, or if Mr. Lee wishes to get a status update on his case, he can input his date that his application was received with the agency on this website, and he can submit an inquiry when the time has elapsed where the agency should be adjudicating the application. And so that provides a check and an opportunity for those applicants to have a bit of— When you say should have adjudicated the application, you mean at what point in time? So it's about the average processing that if it's out of the ordinary that the application is still pending. Outside of the average is what you mean by out of the ordinary? Correct, Your Honor. So you're not challenging the jurisdiction under 1252? Your Honor, for context, the government did not challenge the jurisdiction under 1252 at the district court level. And in our reply brief, we did include a jurisdictional argument in response to— It doesn't matter when you—well, that's a little bit late, but anyway. I mean, that is a subject that the court has to decide, isn't it? Certainly, Your Honor. So what's your position on that? The jurisdiction stripping nature of 1252 would preclude the district court and now this court from reviewing those discretionary decisions of the agency with respect to the processing of adjustment of status applications. So in this particular case, what decision are you referring to that we are not able to review? Are precluded from reviewing. What decision are you referring to specifically? Your Honor, the decision in action is the method by which USCIS processes adjustment of status applications. But I believe their brief says they're not challenging the method. They are challenging the specific application that has been filed in this case. Yes, Your Honor. Am I incorrect on that? In the government's view, the applicants are challenging the process by which— and the resulting delay in this particular applicant's case and in the 33 applicants that came before this particular applicant at the district court level. Even though if the government makes any decision, whether it's to grant or deny, this case would be moot, your argument is still that they are challenging the method and not this specific application. Yes, Your Honor. Even though this case, as you noted, would be moot should the agency tomorrow decide to adjudicate the adjustment of status application. However, what's included in the applicant's amended complaint is a series of allegations of impropriety that took place at the Texas Service Center alleging purposeful delays on behalf of the government. And so it's hard to bifurcate those two things. You can't determine reasonableness or unreasonableness out of context. That's correct. The entire context is the processing of applications, right? That's correct, Your Honor. And so the method by which and the pace at which the agency is tasked with adjudicating these benefits for lawful permanent resident status is something that is particularly within the agency's expertise. And the agency is in the best position to be able to weigh the competing priorities that are before the agency and to allocate the resources that the agency has in order to execute its congressional mandate in a proper way. And it's the government's position that that is a discretionary process. And even if this court disagrees with the government on the 1252 argument, the fact remains that the four corners of the amended complaint fail to state a claim for unreasonable delay. And should the court disregard the track factors, looking at all of the facts in this case, it's pretty clear that there has been no unreasonable delay on behalf of the government in adjudicating these applications. We've been focused on the discretionary action provisions, but there's also a mandamus statute, Section 1361. When, if ever, would that come into play? With respect to adjustment of status applications, and squaring the mandamus statute with 1252, 1252 would rule because, as Judge Jones noted earlier, that language in the statute, notwithstanding, kind of gets us over that hurdle. And looking at the decision of the district court, and I understand that this particular issue was not before the district court, even without looking at the factors that counsel would have this court adopt, at the time that the amended complaint was filed, these applications were pending for no longer than about 11 months. And even the delay now is not unreasonable, looking at all of the facts of this case, and the progress that the government has made, not only looking at the other applications that were previously included in the complaint, and how all of those applications, except for the one, have now been adjudicated, but also that the biometrics have been updated, and that there is progress happening on this particular application. And for those reasons, if there's no further questions from the court, the government would respectfully request that this court affirm the district court's decision dismissing the amended complaint for failure to state a claim. Okay. Thank you very much. Thank you. Mr. Banias, rebuttal. Thank you, Your Honors. First, the government says we don't challenge a discreet decision in the amended complaint. We challenge the failure to make a decision, a final agency action, on receipt number SRC-21900-68766. I don't know how it can be more discreet than that. The government conceded that they are required to make a decision, so we have satisfied the jurisdictional standard of Norton v. I suppose reasonableness included the idea that the agency office had been cyber-hacked and it took them a number of months to get back on track with processing. I think that would be— But that's an explanation why the delay is not unreasonable, and therefore reasonableness inherently connotes context. Your Honor, I think that that hypothetical would be something that they could very easily win the case on at summary judgment, but not at the Rule 12 stage. Nothing prevented the government from, instead of filing a Rule 12 motion, filing a Rule 56 motion and going for summary judgment immediately. In fact, the government does that on occasion. It does that when it has individualized reasons, like the example you're talking about, Judge Jones, for the delay. We have no idea why Mr. Lee's decision is delayed beyond his co-plaintiffs. I'll just point you to page 173 in the record. If you want to know whether they have a line or not, look at the dates. We know in this case everyone's been decided except Mr. Lee. Look at all of the dates that post-date his application. They don't follow in and out. And going to this idea that the Rule 12 motion gives the government the advantage of their opacity and their stranglehold over the information is that in other declarations around the country, their declarants have said we do not follow a first in, first out strictly. So this idea of a queue is a question of fact. When I argue, there's no line, because there's hundreds of adjudicators around the country. Are you arguing that as a matter of law, it ought to be first in, first out, and what's your principle or authority? You're asking for something that a court is not able to decide without getting into the weeds of all adjudications. Your Honor, I think my plaintiffs do not care how the government makes decisions. They can throw their applications up the staircase and pick the ones in the top two to approve and the other ones to deny. They just want a decision. Then how can you arbitrarily complain the first in, first out is not followed? Your Honor, that's under the context of the rule of reason, under the track factors, which again most courts have adopted. This one hasn't expressly said it, but the government claims that's their processing logic. It's a very powerful metaphor, Your Honor. But what I would point you to is the language in Barrios-Garcia out of the Sixth Circuit just last year, where they say that's a question for discovery. The government can't simply allege it and get the benefit of that factual allegation at a motion to dismiss. It's anathema to 12b-6, and for whatever reason the lower courts have decided 12b-6 principles simply don't apply to delay cases. I think this court should reject that idea. Going to the jurisdictional question here, I do want to address one other thing, Judge Willett, that I think you brought up, that can they make a decision to stop adjudicating? There are actually provisions in the regulations. For example, if they find fraud, they can stop adjudicating. They don't have to issue interim benefits. They issue a notice, and they start doing that fraud investigation. That hasn't happened here, or at least we don't know if it's happened here. So they do have the ability to make decisions to stop that they have legal authority to do. And so, Judge Douglas, when you asked what decision are you trying to say triggers 1252a-2b-1, I think you're right on. There is no decision here. We would have to say, this court would have to say, that the government has made a decision to not make a decision in every single case where the applications are pending in order to trigger 1252a-2b-1 under Patel. And I think that because there are provisions where they can stop adjudicating, that is a step way too far to go to say that the fact that the case is still pending, there must have been a decision to not decide this. And in my last 20 seconds, I just want to point out that the government's facts are not relevant here. Again, Rule 12b-6 law is very clear. We look at the complaint, the things it alleges, and things that are properly subject to judicial notice. That means facts that are not in dispute. Here, the facts they claim that are on the public websites are all in dispute. And for those reasons, this court should reverse the lower court, send it back, and let us finish our case. Thank you, Your Honors. Can I ask one further question? And that is, when you filed the case, your client's applications had been pending for less than 12 months. Is there any court in the country that has given any relief under those circumstances? Excuse me. For adjustment of status, Your Honor? Yes. Not to my knowledge. So really, is it fair to say that you were filing the lawsuit in order to gig the administrators into acting on your client's complaints? Your Honor, the original complaint sought interim benefits, that is, work and travel authorization. And those have been decided in six months. We then amended the complaint after they all got their work and travel to challenge the adjustment of status. We were then transferred here to the Western District of Texas. And by the time there's a decision, we're at two years, Your Honor. I would suggest this, too, Your Honor, that the reason there's no case law that says one year is unreasonable is because the government has a strategy of when they lose a motion to dismiss, they settle. It's, again, a high-delay, low-risk strategy for that. So that was why you filed suit, so that they would sell, correct? No, ma'am. I filed it to get interim benefits for my clients. And when they acquired that goal, we  Thank you, Your Honor. OK. Thank you.